**UNITED STATES of America**

**v.**

**PHILADELPHIA YEARLY MEETING OF the RELIGIOUS SOCIETY OF FRIENDS.  (Two Cases)**

**Civ. A. Nos. 88–6368, 88–6390.**

United States District Court, E.D. Pennsylvania.

Dec. 20, 1990.

Valentina G. Viletto, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., David M. Katinsky, for plaintiff.

Peter Goldberger, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

The United States brought these civil actions in August, 1988, to enforce two Internal Revenue Service levies, authorized by 26 U.S.C. 6332(c)(1), upon the Philadelphia Yearly Meeting of the Religious Society of Friends ("Yearly Meeting"). In each case, the government seeks to impose a 50% penalty, authorized by 26 U.S.C. 6332(c)(2), on the ground that the Yearly Meeting refused to honor the levies without reasonable cause.

### I. FACTS

The Yearly Meeting was established in 1681 by William Penn. It presently in-cludes approximately 13,000 members, who are organized into one hundred and one congregations, or Monthly Meetings, located throughout southeastern Pennsylvania, central and southern New Jersey, Delaware and the Eastern Shore of Maryland. The membership gathers in an annual session for worship and business. A body of appointed delegates, known as Representative Meeting, conducts the business of the Yearly Meeting when the full membership is not in session. The Yearly Meeting has about 45 full-time employees, many of whom are also members of the Yearly Meeting. At the time the IRS served the levies at issue in these cases, David A. Falls and William Grassie were employees and members of the Yearly Meeting.

On August 26, 1985, an IRS officer served the Yearly Meeting with a Notice of Levy against the salary of David Falls to collect the unpaid joint federal income taxes of Falls and his wife, Sabrina S. Falls, for the years 1983 and 1984 in the amount of $5,558.21. That notice was followed by a Final Demand served upon defendant on October 2, 1985. On June 26, 1986, an additional Notice of Levy and Final Demand were served on the Yearly Meeting to collect the Falls' unpaid tax liabilities from 1983, 1984 and 1985 in the amount of $9,947.09.

By letter, dated July 21, 1986, the Representative Meeting on behalf of the Yearly Meeting informed the IRS that it knew David and Sabrina Falls were "deeply religious and conscientiously motivated individuals who feel they cannot pay the military portion of their taxes without violating the central tenets of their religious faith." Complaint, Civ.Action No. 88–6390, Ex. F. The letter stated that:

> It is the policy of Philadelphia Yearly Meeting not to coerce or violate the consciences of such persons, or to act as agents for those who do. We, therefore, advise you that we cannot honor the levy you have served.

*Ibid.*

On October 24, 1986, the IRS served a Notice of Levy against the salary of Wil-

liam Grassie to collect $1,276.90 in unpaid taxes for the years 1981 and 1982. Defendant, responding on November 7, 1986, stated that it knew Grassie was "conscientiously refusing payment of the military portion of his taxes in accordance with long-established religious principles of the Religious Society of Friends (Quakers), of which he is a member in good standing." Complaint, Civ.Action No. 88–6388, Ex. C. Defendant again advised the IRS that it refused to honor the levy because:

> It is the policy of Philadelphia Yearly Meeting of the Religious Society of Friends, as employer, not to coerce or violate the consciences of its employees and members with respect to their religious principles, or to act as an agent for those who do.

*Ibid.* The IRS responded on November 25, 1986 by serving a Final Demand upon defendant.

The refusal to honor the levies was in accordance with a written policy of the Yearly Meeting adopted in 1975 and reaffirmed in 1983 and 1988. Def.Ex. at D9–D10.

The parties filed cross motions for summary judgment. Following oral argument, supplemental memoranda were submitted by defendant on June 5, 1990 and by the United States on June 22, 1990.

## II. DISCUSSION

Under the Federal Rules of Civil Procedure, summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The parties agree that there are no disputed facts in this case. The legal issues before the court are whether the levies issued by the government may be enforced against the Yearly Meeting and, if so, whether the Yearly Meeting must pay a statutory penalty for refusing to honor the levies.

### A. Enforcement of the Levies

Section 6332(c)(1) of the Internal Revenue Code provides:

> [A]ny person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary [of the Treasury], shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered * * *.

26 U.S.C. § 6332(c)(1). There is no dispute that the salaries of David Falls and William Grassie were "property" subject to levy, that the Yearly Meeting was in possession or control of the salaries they earned, and that the Yearly Meeting refused to surrender their salaries to the Secretary of the Treasury. The Yearly Meeting defends its refusal to honor the levies on the ground that its action was protected by the Free Exercise Clause of the First Amendment.[1] It argues that enforcement of the levies would deny free exercise of religion by the Religious Society of Friends because it is a fundamental tenet of the Yearly Meeting of the Society of Friends to respect the conscientious actions of its members and Falls and Grassie desired to withhold certain taxes based on their religious convictions. The Yearly Meeting asserts that the government of the United States is constitutionally required to accommodate the religious principles of the Society of Friends by finding another way to collect delinquent taxes from Yearly Meeting employees who are religious pacifists or establishing a means for them to pay taxes only for non-military government programs.

Prior to the decision of the Supreme Court in *Employment Division v. Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), such claims were commonly evaluated under the test set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Under *Sherbert,* parties whose sincerely held religious beliefs were burdened or infringed by a government practice were entitled to a religious exemption from that practice unless

---

1. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend I.

the exemption frustrated a compelling state interest.

In *Smith*, respondents were fired by a private drug rehabilitation organization because they ingested a hallucinogenic drug, peyote, for sacramental purposes at a ceremony of the Native American church, of which both were members. Respondents then applied for unemployment compensation from the State of Oregon, but were denied benefits because they had been discharged for work related "misconduct." The state agency argued to the Oregon Supreme Court that the denial was permissible because peyote consumption was a crime under Oregon law. That court, citing *Sherbert*, reasoned that the criminality of peyote use was irrelevant and held that the denial of benefits violated respondents' rights under the Free Exercise Clause. —— U.S. ——, 110 S.Ct. at 1598, 108 L.Ed.2d at 883.

In *Smith I*, 485 U.S. 660, 670, 108 S.Ct. 1444, 1450, 99 L.Ed.2d 753 (1988), the Court determined that if the state could constitutionally make criminal the religiously motivated use of peyote, the state could also deny unemployment compensation benefits to persons fired because of peyote use. The Court remanded the case to the Oregon Supreme Court and instructed it to determine whether the state criminal law exempted religiously motivated use of peyote from the general prohibition against use and possession of controlled substances. *Id.* at 672, 108 S.Ct. at 1451. The Oregon Supreme Court held that the state law prohibited such use and that the law violated the Free Exercise Clause. *Smith II*, —— U.S. at ——-——, 110 S.Ct. at 1598–99, 108 L.Ed.2d at 883–884. The United States Supreme Court then granted certiorari to consider whether the Free Exercise Clause prohibits a state from barring the use of peyote for religious reasons.

Reversing the state court's decision, the Court rejected the contention that when "prohibitable conduct is accompanied by religious convictions * * * the conduct must be free from governmental regulation." *Id.* at ——, 110 S.Ct. at 1602, 108 L.Ed.2d at 888. To the contrary, the Court held that:

> [T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'

*Id.* at ——, 110 S.Ct. at 1600, 108 L.Ed.2d at 886 (quoting *United States v. Lee*, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982)). Under the *Smith* standard, the Free Exercise Clause is violated by a generally applicable social regulation only, if that regulation is "specifically directed at * * * religious practice," *id.* at ——, 110 S.Ct. at 1599, 108 L.Ed.2d at 885, or if it attempts "to regulate religious beliefs, the communication of religious beliefs, or the raising of one's children in those beliefs * * *," *id.* at ——, 110 S.Ct. at 1602, 108 L.Ed.2d at 888.

The Court concluded that claims for religious exemptions from criminal prohibitions should not be evaluated under any balancing test. Considering that test "inapplicable to such challenges," the Court stated that:

> The government's ability to enforce generally applicable prohibitions of socially harmful conduct * * * cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development. To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling" * * * contradicts both constitutional tradition and common sense.

*Id.* at ——, 110 S.Ct. at 1602–03, 108 L.Ed.2d at 888–889 (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451, 108 S.Ct. 1319, 1326, 99 L.Ed.2d 534 (1988)).

In light of the Court's holding in *Smith* and the limitation placed on the applicability of the *Sherbert* test, defendant's constitutional attack on enforcement of the levies in this case fails. Section 6332(c)(1) is a "neutral, generally applicable regulatory

law," as was the criminal provision at issue in *Smith*. The statute is not specifically directed at regulating the religious practice of the Yearly Meeting, nor does it attempt to regulate the Yearly Meetings' religious beliefs. The law is designed to facilitate the collection of delinquent taxes through the procedural device of a third party levy. Under *Smith*, such a law is enforceable against all individuals and organizations, regardless of whether, or the degree to which, the law interferes with religious conduct.

The Yearly Meeting contends (see Letter of Peter Goldberger, Esq., June 5, 1990) that the new standard announced in *Smith* does not apply to this case. It distinguishes *Smith* on the ground that an exemption from a criminal law for religious observance was claimed there while the Yearly Meeting just seeks compliance with civil tax laws in a manner accommodating its religious convictions. But application of the *Smith* standard does not depend upon whether the law at issue is criminal or civil. Neither does it depend on whether a party is seeking an exemption or an accommodation of its religious views. *Smith* holds that all neutral laws of general applicability are valid against all claims for special treatment under the Free Exercise Clause.

▇ Defendant's argument that *Smith* can be confined to criminal law has recently been rejected by the Court of Appeals for the Third Circuit in *Salvation Army (The) v. Department of Community Affairs*, 919 F.2d 183 (3rd Cir.1990). The Salvation Army (TSA) sought an exemption from the requirements of the New Jersey Rooming and Boarding House Act of 1979 (the Act) and regulations promulgated thereunder. Like the argument raised by Yearly Meeting in this case, TSA claimed that the Act and regulations interfered with its sincerely held religious beliefs.[2]

After defendants granted an exception to some, but not all, the provisions of the Act,

the District Court granted summary judgment in favor of defendants. On appeal, TSA contended that the defendants' concessions were insufficient to accommodate its right to free exercise of religion. After considering *Smith*, and the provisions of the Act and regulations to which the defendants insisted upon compliance by TSA, the Court of Appeals concluded that all of TSA's objections to those provisions based on the free exercise clause should be rejected.

TSA argued that "the Court's holding [in Smith] was limited to free exercise challenges to neutral, generally applicable criminal statutes." The Court of Appeals refused to accept this interpretation of *Smith*. Recognizing that there are a number of phrases in the Court's opinion that might support such a limited reading, it noted that the opinion makes references that are not so limited as often as it makes reference to generally applicable criminal laws. 919 F.2d at 195. The Court of Appeals concluded that the Court was not contemplating a distinction between criminal and civil statutes. In light of the Court of Appeals' rejection of this argument, the holding in *Smith* controls this case.

Finally, this case does not fall within the narrow category of cases to which *Sherbert v. Verner* may still apply: cases in which the government has established a "system for individualized exemptions" from a general requirement but has failed to provide an exemption based on religious grounds. See *Smith*, —— U.S. at ——, 110 S.Ct. at 1603, 108 L.Ed.2d at 889. The United States Congress has not yet established a system providing exemptions from the personal liability imposed by 26 U.S.C. § 6332(c)(1) for individuals who fail to honor levies. Parties refusing to honor levies may be exempted from the 50% penalty authorized by 26 U.S.C. § 6332(c)(2) for reasonable cause. However, that exemp-

---

**2.** The Court of Appeals noted that for TSA, operating a Rehabilitation Center is a sacrament. TSA Rehabilitation Centers are an essential part of TSA's faith and play a role analogous to that of a church in a more traditional Christian faith: "the Centers are the tools whereby Salva-

tion Army Officers practice and preach their basic theology—the regeneration of homeless and socially handicapped men through spiritual teaching, counselling and work therapy." 919 F.2d at 189, citing Affidavit of Raymond E. Howell, ¶ 5.

tion applies strictly to the penalty, not to initial liability for refusal to honor a levy.

For the reasons stated, partial summary judgment is granted to the United States. The levy against the salary of William Grassie for $1,276.90 plus interest will be enforced. The levy against the salary of David Falls originally in the amount of $9,947.09, will be enforced against his wages in the possession of the Yearly Meeting plus interest ($8,882.82). However, the court has been advised that the total tax liability of David and Sabrina Falls has been reduced; the levy cannot exceed the amount of the Falls' tax liability.

**B.  Penalty**

■  The United States claims a 50% penalty should be imposed on the Yearly Meeting for failing to honor the levies. Under 26 U.S.C. § 6332(c)(2), no penalty can be imposed unless the defendant acted "without reasonable cause." The Treasury Regulation interpreting that statute provides that the penalty is not applicable where a "bona fide dispute exists concerning * * * the legal effectiveness of the levy." Treas. Reg. § 301.6332–1(b)(2). Likewise, the Senate Report on the penalty statute stated that "a bona fide dispute ʳ * * over the legal effectiveness of the levy itself is to constitute reasonable cause under this provision." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3740.

When the Yearly Meeting refused to honor the government's levies, in June and November 1986, *Smith* had not yet been decided. The prevailing legal standard at that time was the *Sherbert* test, requiring the government to put forward a compelling state interest to justify any action that burdened religious activity. Indeed, *Sherbert* had been reaffirmed as recently as 1982. *See Thomas v. Review Board*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1982). *U.S. v. Lee, supra*, foreshadowed *Smith* in deciding that imposition of social security taxes was constitutional as applied to an employer who objected on religious grounds to receipt of insur-

ance benefits and to payment of taxes to support public insurance. But the opinion in *Lee*, while quoting the 1961 decision in *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), as to the difficulty in attempting to accommodate religious beliefs in the area of taxation, expressly recognized that religious beliefs could be accommodated and cited *Thomas* and *Sherbert* as retaining vitality. Had *Smith* not been decided, this court could have balanced the Yearly Meeting's liberty interest against the government's interest in collecting taxes through levies. The Yearly Meeting reasonably believed it could prevail under that standard.

First, the Yearly Meeting convincingly demonstrated that the government's demand to honor the levies was in direct conflict with its religious principles.

Second, the Yearly Meeting suggested that its exercise of religious precepts could easily be accommodated by permitting conscientious objectors to pay whatever taxes were due into a "peace fund" dedicated to non-military government operations. A bill to establish such a fund had been introduced in Congress in 1987. See H.R. 2041, 100th Cong., 1st Sess. (1987).

Third, the Yearly Meeting sincerely disputed that the government's interest in effective and efficient collection of taxes outweighed any burden imposed on First Amendment rights. *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), was distinguishable, the Yearly Meeting argued, because employer Lee sought an outright exemption, not only from withholding his employee's taxes but also from paying taxes owed by him. The Yearly Meeting owes no taxes and requires no exemption. It only asks the government to accommodate its religious convictions by not requiring it to withhold taxes of employees as to whom other collection methods were and are available. The distinction has some weight because collection of revenue is more critical to the operation of the government than a particular method of collection.

The Yearly Meeting had reasonable grounds for challenging the "legal effec-

tiveness of the levy" on constitutional grounds. It may not have prevailed, but its creative and forceful arguments raised a "bona fide dispute" and provided "reasonable cause" for the failure to honor the levies.[3] See *United States v. Sterling National Bank & Trust Co.*, 494 F.2d 919, 923 (2d Cir.1974) (penalty inappropriate under 26 U.S.C. § 6332(c)(2) when enforcement of levy depends on "an unsettled question of law"). The Yearly Meeting's motion for summary judgment on the penalty sought by the government is therefore granted.

However, *Smith* has radically altered Free Exercise Clause jurisprudence and practice. *Smith* acknowledges that government may not punish the expression of religious doctrines it believes to be false, but for now it is clear that religious beliefs do not excuse compliance with otherwise valid federal tax laws.

Claims such as those here asserted by the Yearly Meeting are now foreclosed by current law. Failure in the future to honor a tax levy on the First Amendment grounds asserted herein may be subject to penalty. See Treas.Reg. § 301.6332(b)(2) ("[I]f a court in a later enforcement suit sustains the levy, then reasonable cause would usually not exist to refuse to honor a later levy made under similar circumstances.").

\*　　\*　　\*　　\*　　\*　　\*

It is ironic that here in Pennsylvania, the woods to which Penn led the Religious Society of Friends to enjoy the blessings of religious liberty, neither the Constitution nor its Bill of Rights protects the policy of that Society not to coerce or violate the consciences of its employees and members with respect to their religious principles, or to act as an agent for our government in doing so. More than three hundred years after their founding of Philadelphia, and almost two hundred years after the adoption of the First Amendment, it would be a "constitutional anomaly" to the Supreme Court, *Smith*, —— U.S. at ——, 110 S.Ct. at 1604, 108 L.Ed.2d at 890, if the Religious Society of Friends were allowed to respect decisions of its employee-members bearing witness to their faith.

But "[u]nless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme] Court must be followed by lower federal courts no matter how misguided the judges of those courts think it to be." *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982). "[O]nly [the Supreme] Court may overrule one of its precedents. Until that occurs [*Smith*] is the law." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (quoted in *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1364 (3rd Cir.1990)). The *Smith* decision determines the outcome of this action.

Motion for Summary Judgment Granted in Part and Denied in Part.

---

**3.** The fact that defendant raised a constitutional defense to Section 6332(c)(1) weighs against imposing the 50% penalty. Effective enforcement of constitutional rights depends upon thoughtful and aggressive litigation. Imposing a penalty on a party for raising a constitutional defense to a tax enforcement action is a step that should not be taken lightly. A penalty should only be applied when a party raises a constitutional claim that is so clearly foreclosed by the law, its assertion is unreasonable, i.e. frivolous.