**Rosa C. PACKARD, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 3:98 CV 134 GLG.**

United States District Court,
D. Connecticut.

June 4, 1998.

---

**144**

David N. Rosen, Rosen & Dolan, P.C., New Haven, CT, Peter David Goldberger, Law Offices of Alan Ellis, Ardmore, PA, for Plaintiff.

David X. Sullivan, U.S. Attorney's Office, New Haven, CT, for U.S.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff has been a tax protester for the last sixteen years. She has filed tax returns but failed to pay the tax due thereon claiming that it is contrary to her deeply held religious beliefs (she is a member of the Religious Society of Friends "Quakers") against paying for wars or national defense. The Government has been collecting her tax by levying on her bank account which included the assessment of penalties and interest for late payments. Pursuant to 28 U.S.C. § 1346(a)(1), plaintiff has sued to recover the penalties collected from her for the tax years 1992 and 1993.[1]

The Government moves to dismiss this action contending that it fails to state a claim with respect to the sections of the Internal Revenue Code requiring penalties. *See* 26 U.S.C. §§ 6651(a)(2) & 6654. Plaintiff argues that this case cannot be decided on a motion to dismiss since she is entitled to a trial to establish that she had a sincere religious belief based on opposition to war and therefore opposes the payment of taxes which could be used to fund war.[2] For purposes of this motion, the Government concedes that plaintiff has deeply held religious principles in opposition to war and that it was these principles which caused her to refuse to pay her taxes so that no trial is necessary.

There has been a long history of cases in which citizens have contested their obligation

1. Due to the prerequisites to filing suit in federal court under 28 U.S.C. § 1346(a)(1), *see* 28 U.S.C. § 7422(a), *Flora v. United States*, 362 U.S. 145, 157–58, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), and *Shore v. United States*, 9 F.3d 1524, 1527–28 (Fed.Cir.1993), plaintiff has alleged facts in her complaint that she filed claims for refunds, Compl. ¶¶ 25–29, 46–50, and that she paid all penalties through IRS levies on her bank account, Compl. ¶¶ 19–22, 40–43. We note that the Anti–Injunction Act forbids a district court from enjoining the assessment or collection of any tax. 26 U.S.C. § 7421. This ban partly exists to further the purpose of requiring "that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Because plaintiff is seeking only a refund for penalties already paid based on her 1992 and 1993 tax returns, and not an injunction against the payment of any future, potential penalties, we properly have jurisdiction over her complaint under section 1346. Plaintiff also seeks to recover the interest charged on the late payments but her counsel now concedes that we have no jurisdiction over that claim.

2. We note that, for the years in question, national defense expenditures were only a small part of the national Government's expenses paid for from income tax collections. Unlike some Quakers, plaintiff objects to paying any tax rather than deducting that portion which she believes the Government allocates to the Department of Defense. *See Browne v. United States*, Civ. No. 1:97–349 (D.Vt. May 14, 1998) discussed *infra*.

to pay taxes on religious grounds. Almost thirty years ago, the Ninth Circuit rejected such religious objections finding that the Income Tax Acts do not aid a particular religion or punish anyone for their religious beliefs. It commented that "[o]n matters religious, it is neutral" and noted that the ability of the Government to function could be impaired if persons could refuse to pay taxes because they disagreed with the Government's use of tax revenues. *Autenrieth v. Cullen,* 418 F.2d 586, 588–89 (9th Cir.1969), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970). The Supreme Court took the same tack in *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), by holding that the payment of social security taxes was compulsory even if it violated Amish religious beliefs and interfered with their free exercise of religion. Earlier attempts by Quakers to object to the collection of taxes through withholding were also rejected. *United States v. American Friends Serv. Comm.,* 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *see also United States v. Philadelphia Yearly Meeting of Religious Soc'y of Friends,* 753 F.Supp. 1300 (E.D.Pa. 1990) (enforcing IRS levies against the salaries of two members of a Quaker organization). Congress has also rejected these "war tax deductions" as illustrated by its passage in 1982 of section 6702 of the Internal Revenue Code assessing an immediate civil penalty of $500 against taxpayers filing frivolous returns such as claiming a war tax deduction.[3]

■ Section 6651(a)(2) provides a penalty of one-half of a percent per month (up to a maximum of 25%) of the tax due on a return for each month the tax due remains unpaid. The penalty is automatic unless the failure to timely pay "is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). In refund suits, the taxpayer bears the burden of establishing reasonable cause and no willful neglect, *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), and whether a plaintiff meets his or her burden is an issue of law. *Id.* at 249 n. 8, 105 S.Ct. 687.

■ Plaintiff argues that under the *Boyle* rationale, she was without fault in not making payment because she was unable to make such a payment "by a reason beyond her control: to wit, the requirement of religious conscience that she not voluntarily pay a tax that will support war or war preparations." Pl.'s Resp. to Def.'s Mot. to Dismiss, at 6. She does not contend that she is a member of a religious body which opposes the payment of taxes or that the Society of Friends could or would take any steps against her by virtue of her making payments.

This Court rejects the argument that following one's conscience for religious, philosophical, moral or other reasons amounts to a compulsion. It is a considered decision. While plaintiff can, like many other persons in the past, engage in acts of civil disobedience, she must expect to pay society's price if she does so.

Plaintiff concedes that she can be compelled to pay income tax despite her religious beliefs. She argues, however, that she should not be assessed a penalty for refusing to do so because she had "reasonable cause" for her failure to pay and is therefore entitled to the return of the penalty collected. The reasonable cause argument, however, was rejected in the foregoing cases as to a refusal to pay and it follows that the assessment of the penalty is in the same posture. This is particularly true since the Internal Revenue Code, as noted above, imposes a specific penalty on taxpayers asserting a "war tax deduction." Consequently, we find that plaintiff has failed to state a claim for relief under section 6651.

---

3. Plaintiff was not subject to such a penalty because her tax return did not make such a claim

and she simply silently refused to pay her taxes.

Plaintiff makes a further argument that under section 6654 she has established "unusual circumstances" so that the imposition of the penalty "would be against equity and good conscience." 26 U.S.C. 6654(e)(3)(A). There is nothing unusual in these circumstances. Religious objections to various types of taxes have been quite often asserted, and continually rejected. As we noted earlier, if she wishes to engage in civil disobedience, she must expect to pay the price. *Kahn v. United States*, 753 F.2d 1208, 1215–16 (3d Cir.1985).

Plaintiff advances other arguments, such as a Free Exercise clause claim, which are equally unavailing under the existing precedents. The Government has a compelling interest in the collection of taxes and in the assertions of penalties to compel their payments.

■ The only new argument advanced by the plaintiff is that the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb–4, has changed the existing law since imposing penalties substantially burdens her exercise of religion which is prohibited by the RFRA. The pertinent part of the RFRA provides:

(a) **In general.** Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) **Exception.** Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(c) **Judicial Relief.** A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

42 U.S.C. § 2000bb–1. Indeed, plaintiff argues that the structure of the RFRA prevents the issue from even being considered on a motion to dismiss because she argues that the exception in subparagraph (b) constitutes an affirmative defense dependent upon facts which defendant would have to prove at trial and which she is not required to plead. We do not agree with that procedural interpretation. To the extent that plaintiff has claimed that the RFRA supports her suit for return of penalties already collected, it is her burden to establish either that the assessment of such penalties was not a compelling government interest or that it was not the least restrictive means of furthering that Government interest.

As the Supreme Court has noted, the RFRA can be a source of extreme mischief. As applied to state and local governments, it has been found to be unconstitutional. *City of Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Plaintiff cannot seriously argue that there is no compelling government interest in collecting taxes. Rather, she contends that assessing penalties is not the least restrictive means of furthering that interest. Plaintiff urges this Court to accept the argument that the least restrictive means of collecting taxes is to require the IRS to levy upon a taxpayer's bank account. Indeed, plaintiff argues that the penalties are ineffective because she has been refusing to pay her taxes voluntarily for almost twenty years and that the Government has found a means of collecting them nevertheless. (We observe that the fact that she has filed this suit indicates her displeasure at paying the penalties).

We reject the argument that it is less restrictive to levy on assets than to impose penalties in order to further the compelling governmental interest of collecting taxes, especially here, where plaintiff never stated on her tax returns why she refused to pay taxes. If we were to accept plaintiff's argument, it would place a burden on the Government to find a taxpayer's assets, if there are any assets at all upon which the IRS could levy. Also, if the Government could not assess a penalty for the late or non-payment of taxes, we would be opening Pandora's Box to tax evasion because, in effect, plaintiff's argument says to all who will not pay taxes for religious, philosophical, moral or other rea-

sons that the Government must first levy before imposing a penalty. We refuse to accept such an impractical and unworkable system.

The argument that the Government's means of coercing tax payment with penalties for non-payment violates the RFRA was effectively rebutted in a recent decision by Chief Judge Murtha of the District of Vermont in *Browne v. United States,* Civ. No. 1:97–349 (D.Vt. May 14, 1998).[4] He noted that voluntary compliance with the tax code is the least restrictive approach possible and noted:

> Undoubtedly, many Americans disagree with some discrete potential use of their tax monies. Allowing individuals like the plaintiffs to withhold a portion of their due taxes would encourage chaos in that every individual with an objection to a particular governmental expenditure would be able to unilaterally impose additional, time-consuming administrative burdens on the IRS. Furthermore, acceptance of the plaintiffs' arguments would encourage more governmental involvement in religious matters in that the IRS would be required to assess the genuineness of each tax protester's religious beliefs. *See Lee,* 455 U.S. at 252 n. 2 [102 S.Ct. 1051]. Finally, it is difficult to imagine a means of compliance with the tax laws which is less restrictive than the voluntary compliance to which the plaintiffs object.

*Id.* slip op. at 8–9. Assuming that the RFRA is constitutional as applied to the Government's collection of taxes, we see no less restrictive means of inducing the payment of taxes by taxpayers generally or, for that matter, for religious tax protestors. Since the income tax system is a self-reporting and self-assessment one based on voluntary actions, the Government cannot be compelled to resort to cumbersome methods to encourage compliance. To do so "will affect adversely taxpayers' willingness to perform under our voluntary assessment system." *Flora v. United States,* 362 U.S. 145, 176–77 n. 43, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (quoting Riordan, *Must You Pay Full Tax*

*Assessment Before Suing in the District Court?,* 8 J. Tax'n 179, 181 (1958)). Plaintiff's argument about using a less restrictive means of compelling compliance by levying taxpayers' assets is at odds with the Government's compelling interest in the collection of taxes under the present system. We therefore find that the RFRA affords no relief to plaintiff from the penalty provisions of the Internal Revenue Code. The Government's motion to dismiss (document # 5) is GRANTED. The Clerk will enter judgment for defendant.

SO ORDERED.

---

4. These taxpayers paid most of their taxes but withheld 28% which they computed as represent-

ing the portion of their taxes allocated to the Department of Defense.